WILLIAM H. LYLES vs. HENRY D. HATTON, et ux.— June, 1834.

When an executor negligently leaves an estate unsettled for ten years, and then suffers the accounts of the estate to remain before the auditor of the court of equity, for several years before any statement was reported, he is justly chargeable with interest.

After an estate had been ten years in the hands of an executor, he was notified of a claim on the part of the *United States*, and upon his application to the Orphans court, they permitted him to retain a sum in his hands to abide its event. The claim of the *United States* was ultimately defeated. *Held,* that under the circumstances, the order of the Orphans court ought not, like an injunction against payment, to be regarded as a sufficient ground for the suspension of interest, upon the sums due the distributees of the estate.

A judgment at law may be enjoined in part in equity, and when the circumstances require it, a court of equity should perpetuate the injunction as to part, and dissolve it as to the residue.

Upon a bill against husband and wife, the wife never having answered, this court upon appeal refused to pass any final decree, but remanded the cause under the act of 1832, ch. 302.

A mistake in the calculation of interest in the auditor's report, ought regularly, under the act of 1825, to be pointed out to the court by exception, else this court will not notice it on appeal.

APPEAL from equity side *Prince George's* county court. The bill in the present case was filed by the appellant against the appellees, on the 8th of *September*, 1825. It charged, that the appellant became the executor of his father, *William Lyles*, in the year 1815, and passed his final account with the Orphans court of *Prince George's* county, in the year 1823, by which there appeared to be due to *Emily*, the wife of the appellee, as one of the distributees of his testator, the sum of $3022 23; which sum however was subject to many deductions, on account of property purchased by the appellees, at the sale of the personal estate of his testator, and for money paid them by the complainant, on account of said distributive share. That after the passage of said final account, a claim against the deceased's estate, was exhibited by one *Jacob Hoffman,* amounting to $2022 44, subsequently to

which, (at April term, 1824,) judgments were obtained in *Prince George's* county court against the complainant, and the surety in his testamentary bond, at the suit of the state of *Maryland,* for the use of the appellees; which judgment it was agreed, should be released on the payment of such sum as a certain *Trueman Tyler* should ascertain to be due, by the first of August, 1824. And it was further agreed, that if by the first of August thereafter, the Orphans court should direct the complainant to retain in his hands the amount of *Hoffman's* claim, that then the said *Tyler* should credit the complainant with the proportion thereof to which the appellees' distributive share would be subject. That complainant not knowing that the 1st of August was the time limited for the Orphans court to act upon *Hoffman's* claim; and that court not having had a sitting for a long time thereafter, the matter was neglected; in consequence whereof, the said *Tyler,* whose report was made on the 1st of March, 1825, gave the complainant no credit for any portion of *Hoffman's* claim, but reported to the county court that there was due him the sum of $526 46, with interest from the 4th of June, 1825, and costs. That judgment having been entered up upon this report, and execution issued thereon, the complainant obtained an injunction to stay proceedings upon it, which was afterwards dissolved; upon the terms, that the appellees should give a bond, conditioned for the repayment to the complainant of the proportion of *Hoffman's* claim, payable by the appellee, if the same should be established. That very shortly before the obtention of said injunction, suit was instituted against the complainant, as the executor of his father, by the *United States,* for a large sum of money which was claimed of his father, as the surety of *Thomas A. Digges,* the executor of *John Fitzgerald,* the collector for the port of *Alexandria.* That the issue of this suit is doubtful, but result as it may, the expense of conducting the defence will be considerable. That the appellees are well aware of the existence of this suit, but notwithstanding, have issued an execution to co-

erce the payment of their whole claim, refusing not only to secure the complainant against eventual loss, but also to contribute any thing to the defence of the suit. *Prayer*, that complainant may be permitted to retain in his hands, of the amount of the judgment obtained by the appellees, the proportion of the claim preferred by the *United States*, for which they would be liable, and their proportion of the expense of defending the suit, until the same shall be decided; and in the mean time, that they may be restrained by injunction from enforcing their judgment. An injunction was accordingly granted.

The answer of *Hatton*, filed in May, 1827, stated, that the suit of the *United States* spoken of in the bill, had been decided in favor of the defendant, as appeared by a short copy of the judgment of the Circuit court exhibited with the answer; and as the pendency of that suit was the only equitable circumstance stated in the bill, he prayed that the injunction might be dissolved.

The court overruled the motion to dissolve, and sent the case to the auditor, who made his report and statement to the October term, 1830; by which, after charging the complainant with the amount of the appellees' judgment, with interest from the 4th June, 1823, and the costs of the suits, against himself and his surety, and crediting him with various payments, and the appellees' proportion of the expense of defending the suit of the *United States*, &c. there appeared to be a balance due the appellees of $150 76, on interest from August 6th, 1830.

Accompanying this report of the auditor, sundry receipts of the appellees, for payments on account of their distributive share was filed, and also the following order of the Orphans court, passed on the 13th August, 1825. "Ordered by the court, whereas, *William H. Lyles*, executor of *William Lyles*, late of *Prince George's* county, deceased, has made application for authority to detain in his hands, the amount of a claim against the estate of his testator, which has been notified to him since the passage of his final ac-

count, but before the payment over of the residue to the legatees mentioned in the will, which said claim is by the *United States* against his testator as security of *Thomas A. Digges*, for the sum of $8446 09, with interest for at least ten years. It is thereupon ordered by the court, that the said *William* retain in his hands a sufficiency of the assets of his testator to discharge the above claim, in case it should be recovered against him, in due course of law." The complainant excepted to this report.

1. Because the auditor allowed the defendants interest on the amount of their judgment.

2. Because he has allowed the defendants their costs at law, and in equity.

3. Because he has not allowed the complainant his costs.

The court at January term, 1831, overruled these exceptions; ratified the report, and statement of the auditor; dissolved the injunction, and dismissed the bill with costs. From this decree, the complainant appealed to the court of Appeals.

The cause was argued before BUCHANAN, Ch. J., and ARCHER, and DORSEY, J.

*Mundell*, for the appellant contended, that the order of the Orphans court of the 13th of August, 1825, was in strict conformity with the provisions of the act of 1798, and not only protected the appellant against the demands of the residuary legatees of his testator, but made it obligatory upon him to retain the necessary amount, to abide the issue of the suit by the *United States;* and that the fund being thus tied up in his hands for a specific purpose, it was not competent for him, to appropriate it for any purpose whatever. The appellant then, having no power over the fund, could not make it productive, and it would therefore be unjust to him, to make him pay interest upon it. An executor or administrator is never chargeable with interest on money in his hands, when there is no person to whom he

can properly pay it; or where the Orphans court has directed it to be retained, to meet outstanding claims. *State vs. Handy use Townshend,* 7 *Harr. and Johns* 42. *Wilson vs. Wilson,* 3 *Gill and Johns.* 20. The answer in this case admits the right to retain the money, to await the issue of the suit by the *United States,* for it only asks the dissolution of the injunction, because of the final decision of that suit.

*T. F. Bowie,* for the appellees.

To entitle a complainant to relief in equity against an award, some corruption, partiality, misconduct or mistake on the part of the arbitrators, must appear, or a court of equity cannot interfere with it. In the absence of allegations or proof to that effect, the award is binding and conclusive, and cannot be set aside by the court, however unreasonable and unjust it may appear. *Underhill vs. Van Cortland,* 2 *John. C. R.* 339. *Todd vs. Barlow,* 2 *Ib.* 551. *Henrick vs. Blair,* 1 *Ib.* 101. *Shepard vs. Merrill,* 2 *Ib.* 276. *Roosevelt vs. Thurman,* 1 *Ib.* 220.

The arbitrator by the terms of the reference to him, was given until the first of August, 1824, to ascertain the amount due the appellees, and it does not appear that he filed his award until the first of March, 1825. The appellant, therefore, had ample opportunity of presenting before the arbitrators, all just claims to credit or discount, and if he neglected to make the application to the Orphans court, spoken of in the terms of reference, in relation to *Hoffman's* claim, within the time required, it was his own fault, and as the Orphans court never did at any time pass any order in relation to said claim, he never had any equity against the appellees, so far as it regards that claim.

No agreement upon the part of the appellees made with the appellant, subsequent to the filing of the award by the arbitrator, in reference to the said award, is made the ground of equity in the appellant's bill, and none is pretended ever to have existed; but the only alleged ground of equity is, that long after the filing of said award, and the

rendition of the said judgment, a suit was instituted against the appellant, as the executor of his testator, by a creditor, and a subsequent order of the Orphans court by which the appellant was directed to retain in his hands assets of his testator, enough to meet the payment of said claim if it should be recovered against him—and it is insisted that the appellant is not properly chargeable with interest on the judgment recovered against him by the appellees during the time their distributive share was so retained by him in pursuance of said order of the Orphans court. The order of the Orphans court which is made the alleged ground of equity in the bill, was passed on the 13th August, 1825, more than ten years after the period when, by law, the appellant was bound to have settled up the estate of his testator; two years after the actual passage of his final account, and more than twelve months subsequent to the recovery of the judgment by the appellees for their distributive share of said estate. It does not appear that this extraordinary delay on the part of the appellant, was occasioned by any act of the appellees, nor is it alleged that it was authorised by any action of the Orphans court—no application for such purpose appears ever to have been made to said court, and it is difficult to conceive how the appellant can properly derive any aid from the occurrence of a circumstance which owes its existence to his own negligence and delay. If the appellant had paid the several distributees their respective proportions of the personal estate of his testator, at the time the law required him to do so, no subsequent judgment could have been recovered against him by a creditor who had failed to give him the notice required by law; and it is equally clear, that the recovery of judgments by distributees for their distributive shares, after the time limited by law for creditors to present their claims, will bar the recovery of subsequent judgments, by creditors who have not complied with the requisitions of the law, by giving the necessary notice; and it was competent for the appellant to have availed himself of this defence in the suit

instituted against him by the *United States,* and he did not need the aid of the Orphans court by the order of the 13th August, 1825.    That order gave no additional security against the claim of the *United States,* for the fund which it purported to 'affect, was beyond the reach of that court; had been recovered by a judgment at law from the hands of the appellant by a court of competent jurisdiction, and if permitted to avail, would operate as an injunction to the recovery of the judgment by process of execution; and it cannot be pretended that Orphans courts possess any such powers; nor will they be allowed in any manner to interfere with the process of courts of common law.    It follows, therefore, that the order of the Orphans court in question, was unnecessary, and so far as it authorised the appellant to retain in his hands any amount of the judgment which had been recovered by the appellees, illegal and extra judicial, and cannot, of course, furnish any ground for the interposition of a court of equity in the manner asked for in the appellant's bill.

The authorities referred to by the appellant, are not applicable here.    It is not pretended that there was no person in existence, properly authorised to receive the amount of the appellees' judgment, for any portion of time.    The bill on the contrary shews the fact to be otherwise, and it is difficult to conceive how such an idea should have been held by the appellant's counsel in the face of the facts as exhibited by the pleadings in the cause.    In the case of *Wilson vs. Wilson,* 3 *Gill and Johns.* 20, the order of the Orphans court directing the administrator to retain assets in his hands to meet the contingency of a suit, was made before the passage of the final account, with the consent of all the parties interested, and at a period of time when the Orphans court might with propriety have passed such an order.    No judgments for distributive shares had been recovered against the administrator at the time of the order, and the opinion of the court is founded upon the consent of parties, and the legitimate action of the Orphans court.    But

no such assent of parties appears in this case, none is charged in the bill, and the fact is known to be otherwise.

The auditor's report is therefore correct, so far as it allows the appellees interest on the judgment at law and the costs of suit, both at law and in equity; but the third exception to his report presents a different point. At the time of the recovery of the judgment by the appellees against the appellant, two other judgments for the same amounts, and for the same distributive share, were recovered against his sureties on the testamentary bond, and the auditor has charged the appellant with the amount of the costs, which the appellees incurred in prosecuting said suits against the securities of the appellant. The appellant is clearly chargeable with the same, and his securities might have had recourse at law against him for the same. In a court of equity costs are awarded or not, according to the justice of the case, and always rest in the sound discretion of the court, to be exercised upon a full view of all the merits and circumstances of the case, and if the claim for costs rests upon substantial equity, they will be allowed. *Nicoll vs. Trustees of Huntington,* 1 *John. C. R.* 166. *Eastburn vs. Kirk,* 2 *ib.* 317. The allowance of such costs in similar cases has been the established usage of the court of Chancery, and to avoid circuity of actions, courts of equity will always decree against the party equitably liable for the same.

*Duckett,* on the same side.

The appellant in his bill for an injunction, of the 8th of September, 1825, admits that he settled his final account with the Orphans court of *Prince George's* county in 1823; and ascertained the distributive share of the appellees to be $3,022 23¼. He alleges, however, that the distributive share of the appellees was subject to considerable deductions on account of property purchased by *H. D. Hatton,* at the appellant's sale, and on account of money paid by the appellant for the appellees to the other representa-

tives. The appellant having admitted that his final account was settled in 1823; without specifying the month or the day of its settlement; the auditor having charged interest from the 4th of June, 1823, the county court having ratified that report; the record furnishing no evidence that the final account of the executor was not settled on that day; this court are furnished with no data from which they can draw an inference that the final account was not settled on the 4th of June, 1823, and cannot, therefore, but conclude that the final account was settled by the executor, and the distribution struck on the 4th of June, 1823. The act of assembly, 1798, *ch.* 101, *sub-ch.* 10, *sec.* 10, is in these words: "Whenever it shall appear by the first, or other account of an administrator, that all the debts of, or claims against the estate, known by, or notified to him, have been discharged or allowed for in his account, it shall be his duty to deliver up and distribute the surplus or residue of the estate, as hereafter directed : provided that his power and duty with respect to future assets shall not cease, and after such delivery, the administrator shall not be answerable for any debt afterwards notified to him, provided he shall have advertised as herein before directed, unless assets shall afterwards come into his hands, which shall be liable for such debts." It was evidently, therefore, the duty of the executor to have delivered over to the appellees, the amount to which by law they were entitled, the very moment his final account was settled. The allegation that the appellees were in debt to the executor in an amount less than their distributive portion, does not vary the principle, for although it was competent for the executor to have retained in his hands for his own use, the sum actually due · him from the appellees, yet he was equally bound at the same period of time, to have delivered over to the appellees the balance due them, after deducting the amount due him. The award of *Trueman Tyler*, which became a judgment of the court, did nothing more than ascertain the precise sum, which the appellant, on the 4th June, 1823, upon

an equitable adjustment of their accounts, ought to have paid over to the appellees, and which sum is $526 46.

Assuming then, upon the foregoing premises, that it was the duty of the appellant, on the 4th of June, 1823, to have paid over to the appellees the sum of $526 46, we are led to enquire whether, having failed to do so, he was not bound to pay interest to the appellees on the aforesaid sum, so long as he failed to pay it over to the appellees. In this view of the case it is assumed, that *Trueman Tyler's* award barely ascertained the principal sum due on the 4th of June, 1823, from the appellant to the appellees; and did not embrace interest, mesne the 4th June, 1823, and the date of his award. It is also assumed, that the action of *Prince George's* county court by injunction, &c. did not impede the currency of interest, if interest began to run on the 4th of June, 1823. The proposition, therefore, now suggested is, did interest commence running on the principal sum of $526 46, on the 4th of June, 1823. It is contended that it did. Interest is chargeable on all liquidated sums from the instant the principal becomes payable. *Blaney vs. Hendricks*, 2 *Wm. Blackstone's Rep.* 761. 3 *Wilson's Rep.* 205. If one detains the money of another wrongfully, he ought to pay interest. *Ekins vs. The East India Company*, 1 *P. Williams Rep.* 396. Interest is recoverable against a man who receives the property of another and holds it against his consent. *The Commonwealth vs. Crevor*, 3 *Binney*, 121. See also *Pope vs. Barret*, 1 *Mason's Rep.* 117. Where a party wrongfully obtains or detains the plaintiff's money, he is chargeable with interest from the time of his so obtaining or detaining the same. *Wood vs. Robbins*, 11 *Mass. Rep.* 504. See also *Lowndes vs. Collens*, 17 *Ves.* 27. Interest is due upon a balance ascertained by an auditor. *Crawford vs. Willing*, 4 *Dallas*, 289. In *Scott vs. Dorsey*, 1 *Harr. and Johns.* 235, the court of Appeals of this State allowed a legatee interest as against the executor, from the time the legatee became entitled to receive the legacy.

It is upon the above authorities clear, that interest was due from the appellant to the appellees upon the amount ascertained by the award of *Trueman Tyler*, to have been due to the appellees on the 4th of June, 1823, until the same was paid by the appellant; that it commenced to run on the said sum the moment the final account was settled, and that it continued to run until paid, unless the award of *Trueman Tyler* embraced the interest which accrued, mesne the settlement of the final account and the award, or unless the currency of interest was arrested by the injunction of *Prince George's* county court, issued on the 8th of September, 1825. There is no proof in the record that the award of *Trueman Tyler* did embrace interest, which did accrue mesne the settlement of the final account and the award, and in the absence of any such proof, the inference is legitimate, that that award merely ascertained the principal sum due to the appellees on the 4th of June, 1823, more particularly since the award is so considered both by the auditor in his report of October, 1830, and by the court in their decree of January 1831, ratifying and confirming the report.

The only remaining inquiry upon the subject of the appellant's first exception to the auditor's report of October, 1830, is, whether admitting that interest did begin to run on the amount due the appellees on the 4th of June, 1823, it was not arrested by the injunction of *Prince George's* county court of 8th September, 1825. It is contended, that it was not arrested, and in support of the position the following principles and authorities are referred to. In *O'Donnell vs. Browne*, 1 *Ball and Beatty*, 262, it is laid down as a general rule, that where a party is prevented by the court from proceeding to establish his right at law, it is the duty of the court to see that no injury arise to him in consequence of its interference: therefore, where an annuitant was restrained by injunction from proceeding at law, to recover the arrears of a rent charge, interest was allowed. The same principle is recognised, in *Pulteney vs. Warren*, 6 *Ves.* 92, 93, in which case *Ld. Eldon* says, "If there be

a principle upon which courts of justice ought to act without scruple, it is this; to relieve parties against that injustice occasioned by its own acts or oversights at the instance of the party against whom the relief is sought."

In a court of equity, a debt secured by bond may be carried beyond the penalty of the bond, if the debtor has by injunction restrained the creditor from proceeding at law, and there has been no misconduct on the part of the creditor. *Grantt vs. Grantt,* 3 *Russel,* 598. Creditor prevented from obtaining judgment by act of court of equity, put in the same situation as though he had. *Pulteney vs. Warren,* 6 *Ves.* 93.

Upon the above authorities it appears therefore most clearly, that the action of the court of equity did not arrest the currency of interest, if interest was running at the time the injunction, which was subsequently dissolved, issued.

The exception is a general exception to the allowance of any interest at all. It does not ask for a rejection of the auditor's report, because interest should not have been allowed upon *Trueman Tyler's* award, mesne the settlement of the final account and the judgment of award, but it wholly denies the propriety of allowing interest upon the award, for any period of time whatever. If interest was allowable for any period of time whatever, the county court were right in overruling the first exception of the appellant, which sought to overset the audit because not one cent of interest was allowed for any period of time upon *Trueman Tyler's* award. It has been shewn that the injunction did not arrest the currency of interest. The award was a general judgment, and as such carried interest as a matter of course, where the creditor, as in this case, has been guilty of no impropriety. Admit therefore, merely for the sake of argument, that the award of *Trueman Tyler* did embrace interest, mesne the settlement of the final account, and the time of rendering the award; still interest was due, and therefore properly allowable by the auditor, from the time

the judgment on the award was rendered, until the judgment was paid, unless a court of equity will by its own act, occasioned by the appellant, put a vigilant creditor in a worse condition than he would have been in, independently of the action of the court.

The county court were evidently right in overruling the second and third exceptions of the complainants, since the appellees were entitled to receive from the appellant, their costs upon the suits instituted originally upon his administration bond, and also entitled to receive from the appellant, their costs in this suit, to which they were subjected by the pertinacity of the appellant, in all of which suits the appellant was defeated, and to which he submitted without appeal.

The counsel for the appellant in support of the appellant's first exception to the auditor's report, has referred to two cases decided in *Maryland*, the case of *Handy vs. the State use of Townshend*, 7 *Harr. and Johns.* 42; and the case of *Wilson vs. Wilson*, 3 *Gill and Johns.* 22; neither of which cases it is conceived, have any bearing upon the one under consideration; the principles invoked in the former, although perhaps good law, was not a decision of the court of Appeals, but the decision of a single judge at *nisi prius*, not appealed from; and simply alleges that an administrator or executor is not chargeable with interest upon a distributee's portion, which he kept in his hands during the minority of the distributee, there being no guardian to receive the fund. In the latter case, the Court of Appeals refused to allow interest upon money detained by the administrator, with the approbation of the parties, and under the sanction of the Orphans court, to meet suits which it was thought would probably occur. In this latter case the money was retained (unlike the case under consideration) not after, but before the settlement of the final account with the Orphans court.

Dorsey, J., delivered the opinion of the court.

We think the county court was right in overruling the exceptions filed to the report of their auditor. The negligence of the appellant, (which is wholly unaccounted for,) in leaving the estate unsettled from the year 1815 to 1825, and then in suffering the case to remain before the auditor for several years before any statement was reported to the court, render him justly chargeable with interest. The order of the Orphans court, under the circumstances in which it was made, ought not, like an injunction against payment, to be regarded as a sufficient ground for the suspension of interest. But the court erred, in the mode which they adopted to carry their decision into effect. Instead of decreeing that the complainant pay the respondents, the amount ascertained to be due by the auditor's statement, and that the injunction granted be dissolved, and the bill dismissed with costs to the complainant; the decree ought not to have dismissed the bill, but perpetuated the injunction, as to all the residue of the judgment, except the amount ascertained to be due by the auditor's report, as to which, the injunction should have been dissolved; and for that sum with the accruing interest, the defendants should have been left at liberty, to proceed on their judgment at law. Under the present decree for the unqualified dissolution of the injunction, the defendants are left at liberty to coerce the payment of their entire judgments at law, and in addition thereto have a right to collect by execution, the amount awarded to them by the auditor's statement. This it is apparent was not the intention of the county court.

But there is another defect in the proceedings, which will prevent this court from passing a final decree in the case. *Emily Hatton* has never answered the bill, nor does any reason appear in the record why she has not been compelled to do so.

There is an error in the auditor's calculation of interest on the sum awarded to be due by *Trueman Tyler*, having

calculated interest from the 4th of June, 1823, instead of the 4th of June, 1825. But this mistake forms in the present aspect of the case, no ground for the reversal of the decree. It is not so specifically pointed out by any of the exceptions, pursuant to the provisions of the act of 1825, as to satisfy this court, that the court below made any determination thereon.

That *Emily Hatton* one of the defendants may have an opportunity of answering the complainant's bill; we feel ourselves enjoined by the provisions of the Act of Assembly of 1832, *ch.* 302, to remand this case to *Prince George's* county court, as a court of equity.

REMANDED FOR FURTHER PROCEEDINGS.